Good morning. May it please the Court, Philip Leiser on behalf of the appellants. This was an FLSA case and the issue before the court is whether the district court abused its discretion in its calculation or in its determination of the award of attorney's fees. And we contend that the district court did not really give any legal analysis of its decision. This was an FLSA case which by definition are in most cases pretty straightforward. Counsel, can I ask you just kind of a framing question because I really don't understand what is going on in this case. What is your understanding of the basis for the fee award? Is this an award of prevailing party fees under the FLSA fee shifting provision or, and this is sort of what I gleaned maybe from the record, which is a bit limited, is it that the settlement agreement provided that defendants would pay fees and defer to the magistrate judge to set the amount? I believe that is the case. Which one? It was the latter. The latter. Okay. So there's a settlement agreement that says the defendants are going to pay fees and the magistrate judge will figure out how much. I believe that's correct. Well, if that's correct, I don't understand why, but your whole argument is that the magistrate judge, I think it's particularly at step one, didn't do the barber factors and everything. Well, why does he have to if these aren't statutory fees? Well, I think that the court regardless has to have a- Why? If the settlement agreement says the defendants are going to pay fees in an amount that the magistrate judge thinks is reasonable, why does the magistrate judge have to do anything? Why doesn't he just have to pick a reasonable number? Well, I think that regardless, the court always has to- No. You have to do that under the fee shifting statute. But you told me this is not a fee shifting statute award of fees, so I don't understand the assumption that all the standards that would apply if it were apply in this case. And we don't have the settlement agreement. I'm at a loss. Feel me? Well, I mean, I have to say that, you know, I came into this case at the appeal phase, so I'm a little bit hesitant to say, you know, definitively whether this was fee shifting or not, but my understanding is that the parties reached a settlement and agreed to submit the fees to the magistrate. However, having said that, I don't believe that that gives a court just carte blanche to just pick arbitrary numbers for those fees. Doesn't it sort of depend what the agreement said, I guess? Like, maybe the agreement says the defendants will pay fees in whatever amount the magistrate judge deems in its discretion to be reasonable. Well, yeah. Again, discretion still has to be constrained by factors. It's not just a question of, you know, we'll just let a judge pick a number out of a hat. I mean, that's just — I don't think that's ever acceptable. The court still has an obligation to articulate the basis for its discretion. Well, the court did plenty of articulating for the basis of its fees. I agree with you, it didn't apply the Barber factors, but I don't know — like, unless the agreement says the magistrate judge will apply the Barber factors, like, I just don't understand why every little nuance of the standard for statutory fees translates into a settlement agreement. Well, I don't think, under any circumstances, a settlement agreement would provide the court with unfettered discretion — But there's room between unfettered discretion and the Barber factors. That's pretty picky. Well, yeah, I mean, that's the court's position, but I think that — It's a question. I can't figure out for the life of me what is going on in this case. I mean, the fact is, it was an FLSA case. Both parties, I think, engaged in litigation that was really unnecessary that did not advance the case. I don't blame Mr. Ryu for that exclusively, but I think both parties, you know, pursued claims that really had no legitimate impact on the case one way or another, and I think that those were not properly addressed by the trial court. The court gave an analysis, but it was not a legal analysis. It was simply an arbitrary number that the court picked and said, well, I think $30,000 per plaintiff is a reasonable figure. But what you said — or, I mean, it wasn't you, but what the defendant said at the hearing was, like, man, like, they've come up with this step one, lodestar figure. Like, that's a lot of documents. We can't go through all of that. What we're going to say is we'll ballpark it, cut it down by 60 percent. I mean, it's not like they came in and did a Barber analysis and, like, analyzed each thing. They just said, eh, we think 60 percent of that. And then, by the way, that would have been around $300,000. The plaintiffs wanted $690,000, and the judge awarded $350,000. I mean, the defendants did pretty darn well here. MR. GOLDSTEIN. Well, I mean, what I think is pretty clear the judge did is said, okay, let's see, the defendants presumably want to pay zero. The plaintiffs want $700,000, so we'll just cut it in half. MS. MCCARTY. What do you mean the defendants presumably want to pay zero? The defendants came in and said, we think $300,000 would be fair. MR. GOLDSTEIN. True. But, I mean, the Court, in cutting the fee award in half, there really was no explanation for why a 50 percent reduction, why a 60 percent. I mean, what factors did the Court consider? All the Court said was that, you know, both parties did a very good job, and there were complicated issues in this case, but there really weren't. It's an FLSA case. There were no real complicated legal issues in this case that, you know, from the plaintiff's perspective generated almost $800,000 in legal fees. That just seems on its face unreasonable. I think that the Court, the trial Court was required, regardless of whether the fee award was pursuant to statute or whether it was submitted to the discretion of the Court, a Court still has to articulate legally relevant bases for the exercise of its discretion, and I don't see how that was done here when a Court basically just picked a number and multiplied it by the number of plaintiffs and said, those are the fees that the plaintiffs are entitled to. I think it was an abuse of discretion, and I think both parties have asked the Court, have asked this Court to remand the case for a determination, because I think both parties here agree that the amount that was determined by the trial Court was determined arbitrarily without really regard for the Barber factors or any other factors that I could discern that the Court articulated. Thank you. Thank you. Saru? Good morning, Your Honor. Michael Hyun-Kwon, reappearing for the appellees and cross-appellant, Your Honor. I planned my arguments a little bit differently, but based on Your Honor's question relating to, you know, are we doing fee shifting here, or are we asking the magistrate judge to pick whatever, you know, he thinks is reasonable. And I think, you know, I know, I mean, Mr. Leister joined this case only after the trial phase over. There were, including Mr. Leister, three lawyers for the defense, and then I'm the one who started this case from the beginning, came all the way. So I know your answer to your question, but that's not on record. But I think we have kind of the answer to your question on the record, not direct. Well, in a way, direct. So if Your Honor see Joint Appendix 970, which is the transcript of the district court magistrate judge, who we consented to his jurisdiction completely, sets forth how he calculates the fee awards. He said in order to properly calculate an attorney's fees award, courts undertake a three-step process, step one, step two, and step three. And then, you know, that's usual step one to three that this Fourth Circuit has been using and pretty much uniformly used in entire United States federal systems. And then the district court courts render versus power cum construction 780 Fed Appendix 16, which is a Fourth Circuit's 3D81. So counsel, you don't have to cite all the cases. So is your position then that actually these were statutory prevailing party fee shifting fees? Not necessarily, Your Honor. Actually, before Your Honor brought up that issue, I honestly did not recognize that issue, honestly. But when you just brought up, I thought about it, and then this is the answer that I have. In the settlement agreement, we didn't specify it is going to be fee shifting or it is the discretion of the magistrate judges. But here, the judge set forth how he analyzed. And then this is the analytical frame that magistrate judge used it. Well, but I think it might really matter, because if these are supposed to be statutory prevailing party fee shifting fees, I would have expected a finding that the plaintiffs were prevailing parties, which I know the defendants were disputing. I would have expected some reference to the barber factors, some reference at Step 3 to the degree of success, and there's none of that in here. So that seems somewhat problematic if these are supposed to be statutory prevailing party fees. If it's just a settlement agreement that says, you know, the magistrate can determine fees in his discretion, he might want to use the basic three-step process without getting into all of the barber details, and that would be fine. So I don't know how I'm supposed to resolve this case without knowing what is the source or the basis of these fees in the first place. My argument and my belief is the latter, Your Honor. So it was district court judges' discretion. It was not typical fee shifting situation, because we settled, and then we couldn't settle on the fee. So let's settle on the damages to the plaintiffs, and let's put this to – put this before the magistrates, just because we have 10 plaintiffs, and then, well, plus one in another case, and we have multiple cases that were consolidated, again, not bifurcated, separated into separate trials. So all the cases, all the work put into this case, it's really hard to index it for this case's this issue. So that's how we decided. And then the – But, Mr. Ruehl, if I could, you didn't argue that in your brief. You said barber did apply, didn't you? Didn't you give the barber framework? You justified under barber framework, didn't you? Or am I wrong about that? I did not argue this issue. I just followed the – Barber out framework, didn't you? I just followed the barber framework. So you argued as if it were a statutory framework for the award of attorneys' fees. That's what you argued in your brief. And, you know, here, you don't get to argue what's not in your brief. Yes, you are right, Your Honor. I did not recognize that issue, honestly. Right. But I just followed the barber analysis framework because that's what the district court judge set forth here. So I followed that. And then for step one, step two, district judge decided, and in fact accepting the numbers from the plaintiffs, in fact, the defendants did not even challenge those issues when the judge gave them multiple – not multiple, at least twice opportunity to challenge it because, according to them, it was too much information. We didn't have time to read. And they, in fact, abandoned that argument. And then they are coming here and then saying that, oh, we don't like the way the district judge explained it to us. Well, the problem is it's not like whether the district judge described it to the appellant's satisfaction, but the issue is whether the district judge made an error under the circumstances to make it abuse of discretion beyond his discretion, Your Honor. And they didn't raise that and didn't argue it. So for that, the appellant's appeal fails. Then what is this appellee cross appellant's appeal? Step one to three, we don't argue step one, step two are wrong. We don't even argue step three's fact findings are wrong. We are saying that from there, going to the calculation. So, for example, district judge can find this, you know, there is some block billing. I'm just saying hypothetically. And then, in fact, I believe a district judge said, you know, he sees some block billings here and there, some, you know, some things that he would not be happy to see in some of the billing records. But, you know, it's not that huge deal. So here I give you the numbers. And then he suddenly pulled out $30,000 per plaintiff. And then plus $50,000 for considering the special circumstances in this case. And the basis is, Mr. Ryu, you might be disappointed, but this is a huge amount of money to me. And I believe that portion, we are, the appellant, not appellant, appellee cross appellant are saying that that is beyond reasonable. That is beyond the discretion. Because whether the district judge is following the frame, a fee shifting framework, or whether the district judge is exercising his discretion, particularly in this case he's using the fee shifting, the regular statutory step one to three, he's borrowing it to improve or to use as his reasonable analysis, reasonableness frame. But at the end, suddenly we have that it is a huge money. I mean, I don't think that is, I believe at that point, I really respect Judge Fitzgerald. We had very heated arguments during the settlement discussion. But still, he, I think, there he, I think it cannot be defended at that level it was reasonable. Particularly the 20-1047 indexed, the captioned Sohn versus Agape in the below, it is consolidating six cases. And then there's another one, which is indexed Lee versus Agape, which is kind of in this appeal, consolidates 1047 and then that one together and then became kind of the, how should I say, the appeal case. They are quite different in terms of their procedure status. So for the six cases in 1047, they finished all the discovery when several motions, including the motion for sanctions by the defendant attorney against me for drinking during the deposition, which I didn't, but anyway, the district court denied it even without opinion. And then they appealed, not appealed, reconsideration. Again, it was denied without any opinion. But anyway, and then it all the way went to the summary judgment and then a final pre-trial conference and trial, all the trial submissions being made. And then it was grouped into three trials and eventually they were settled one group by one group one. Lee case did not even progress to deposition. 1047 even had more than at least 20 depositions. The Lee case, 331, did not even progress to deposition. It was settled after the paper discovery right before the deposition. And the district judge said 30,000 for that case as well per plaintiff. I mean, just looking at that procedural difference, obviously the district judge can, I mean, so based on that, I believe the calculation, 30,000 multiplied by 10 plaintiffs plus 50,000, that is that is not reasonable. That is at least even if district judge has the discretion and it was, I believe, how should I say, it was a little too much. So, I'm sorry, it was what? A little too much to accept. Oh, I see. I see. I'm sorry. Not it was too much money. Oh, Your Honor, I think it's too little money. I'm sorry. I'm sorry for misleading you. But, so the second part of our appeal is I listened to the attorney's fee arguments of this court for other cases just to get the feel how the oral argument goes and then I forget which judge it usually takes care of the attorney's fee issues when it's appealed like a second time, you know, or third time. And then I think, you know, that's because, you know, the fee part should not be the major litigation. And I understand that's why you have across the board discount of 15 percent, 20 percent, because, you know, no one in a way be able to reconstruct every detail and then we cannot watch it like video. So, I understand. But even if I understand the court's kind of not written policy and I understand the reasoning behind it, but this appellee and cross-appellant's request to the court is not just simply vacated and the discount rate of 15 percent in Lee versus Agape, 311 or 331, use the same discount rate in the 1047 and then just save us from any more unnecessary fighting over this fee thing become another second phase of the second major litigation phase, your honor. I think the court has the power to do that legally and then the factual basis on here supports that. And then whether it was a regular fee shifting case or magistrate judges discretionary power case, appellee cross-appellant's argument respectively submit that that 30,000 multiplied by 10 plus 50,000, that is not reasonable, your honor. Any questions that I may answer, your honor? I just want to very quickly just be clear. What do you want us to do? You want us to send it back and let the judge start tabula rasa, clear slate and then decide what the amount should be or do you want to send it back where you get at least what he gave you and then anything else would be no for that? What do you want us to do? If the court decides to vacate it or demand, I understand there might be one option, but the respectfully request for the court to do is changing the fee award amount to pretty much 50% discount from that to 5-0% discount to 15, 1-5 discount rate. You want us to award fees. You want us to figure out the reasonable amount and you think the reasonable amount is a 15% discount and we should order that. That's right, your honor. And then the reason that is reasonable is not out of my head, but based on 311 or 313 Lee versus Agape, which is already, the judge didn't specifically say this is a 15% discount. He didn't say it, but we can infer that is the discount rate and then we can apply it to here, your honor. Okay. Any questions, your honor? Thank you, Mr. Ryu. Thank you, your honor. Just very briefly, Mr. Ryu is essentially asking the court to remand to the trial court for yet another argument. No, he's not. He's saying we should set the number at 15%. He's saying either set the number or, yeah, I guess that's what he wants to do. But again, the Supreme Court has said that a district court abuses its discretion if it fails or refuses to arbitrarily. Counsel, can I ask you to address your colleague's forfeiture point, which is something that had bothered me too. Your appeal is all about step one, the barber factors, the Lodestar number. But before the magistrate judge, whatever kind of a hearing this was, you said, we don't have a step one number. We don't have any calculations to give you. We don't have anything you should take out of that. We just think cut it down by 60% at step three. And the magistrate judge puts this on the record. He says, you're not in a position to challenge on step one or step two. Your argument is at step three. So how can you appeal now about step one and Lodestar? Well, I think we're still appealing step three because step three requires the court to... Not in your brief. Your brief is entirely about the Lodestar figure was improperly calculated because he didn't do the barber factors. Well, I think that regardless of what was or wasn't argued, the point is that a court can never simply... I mean, there's no regardless of what was and wasn't argued. You can't appeal on an issue that you told the magistrate judge were not challenging. Maybe if you hadn't said that, the magistrate judge would have looked at the barber factors. I understand. Your client, your client. But we are still challenging step three. And what I'm understanding from the court's... So you're challenging, you're saying when he went down to 50, he abused his discretion going down from 60 to 50. And that's in your brief somewhere? What I said in my brief is that the court did not properly... Calculate the Lodestar. Right. Not just the Lodestar, but what the reduction should be for unsuccessful claims. But I think from what I understand from the court, that if the calculation of fees was not pursuant to the statutory fee shifting agreement, that that gives the trial court unfettered discretion to do whatever it want. I disagree with that. I don't see how any court can deviate from the discretion, the factors that a court is required to consider in determining fees, which are set out in barber. And I don't think that the fact that it was by agreement rather than pursuant to a fee shifting statute should really make a difference because under that rationale, a trial court could perhaps even just flip a coin. I don't think a court can ever abandon the factors that the Supreme Court says ought to be... You think people can't contract around the barber factors. It would be impermissible to have a settlement agreement that says we're sending this to the magistrate judge. The magistrate judge needs to explain his decision, like be careful, but need not necessarily use the barber factors. You think that is null and void, is against public policy. Because then it suggests that the court can use any factors it wants, including no factors. So, yes, I believe that the exercise of discretion is constrained by the factors that the U.S. Supreme Court has said ought to apply regardless of whether it's fee shifting or regardless of whether it was submitted to the magistrate's discretion. And you think if I read this brief again, just before we let you go, I am going to find something besides a challenge to the step one load star figure and the barber factors? I mean, I know there's a constitutional challenge, but apart from that... You don't know. Okay. All right. Thank you. Mr. Ryu? Any questions that you want me to answer? Otherwise, I don't have extra to add, Your Honor.  Thank you, Your Honor. Thank both counsels for their arguments. I will ask the clerk to adjourn the court.
judges: Roger L. Gregory, Pamela A. Harris, David A. Faber